IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

LESLIE J. HOFMAN, §
 §
 Petitioner, §
 §
v. § No. 4:09-CV-568-A
 §
RICK THALER, Director, §
Texas Department of Criminal §
Justice, Correctional §
Institutions Division, §
 §
 Respondent. §



MEMORANDUM OPINION
and
ORDER

This is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, Leslie J. Hofman, a state prisoner currently incarcerated in Pampa, Texas, against Rick Thaler, Director of the Texas Department of Criminal Justice, Correctional Institutions Division, respondent. After having considered the pleadings, state court records, and relief sought by petitioner, the court has concluded that the petition should be denied.

I. Factual and Procedural History

In November 2006 petitioner was charged by indictment with possessing a prohibited substance in a correctional facility in Cause No. CR10344 in the 355th Judicial District Court of Hood

County, Texas. (State Habeas R. at 64) The indictment also included sentence enhancement and habitual offender allegations elevating the punishment range from 25 years to 99 years or life imprisonment. (*Id.*) A jury found petitioner guilty of the offense, petitioner pled true to the enhancement and habitual offender allegations, and the jury assessed his punishment at 35 years' confinement. (*Id.* at 68) The state appellate court affirmed the trial court's judgment, and the Texas Court of Criminal Appeals refused his petition for discretionary review. *Hofman v. State*, No. 02-07-092-CR, slip op. (Tex. App.-Fort Worth Aug. 31, 2007) (not designated for publication); *Hofman v. State*, PDR No. 1201-08. Petitioner filed a state application for writ of habeas corpus challenging his conviction, which was denied without written order. *Ex parte Hofman*, State Habeas Appl. No. WR-38,130-03 (referred to herein as "State Habeas R.") This federal petition followed.

The evidence at trial reflected that petitioner, who was an inmate trustee at the Hood County jail, was permitted to work on a crew outside the facility. On May 3, 2006, when petitioner returned from work, officers searched his shoes and, upon removing the insoles, found a package of tobacco in one shoe and a baggie of marijuana in the other shoe. (RR, vol. 2, at 122-23,

135-38, 173-75)  The shoes and videotapes of the jail's booking area and sally port were not preserved after the search. Petitioner did not testify or call any witnesses during the guilt/innocence phase of his trial.  The defensive strategy was to criticize the state for losing the shoes and videotapes in furtherance of a theory that the shoes were not petitioner's, were not the shoes he wore outside that day, and, instead, were shoes handed to him by the officer who stripped searched the trustees upon their return from outside.  (Pet'r Br. at 4)

## II.  Issues

Petitioner raises the following claims for relief:

(1) Delayed prosecution;
(2) Spoilation of evidence;
(3) *Brady* violation;
(4) Vindictive prosecution; and
(5) Ineffective assistance of trial counsel.

## III.  Rule 5 Statement

Respondent believes that petitioner has sufficiently exhausted his state court remedies regarding the claims presented, as required by 28 U.S.C. § 2254(b), and that the petition is neither time-barred or successive.  (Resp't Answer at 5)

## IV. Discussion

### *Legal Standard for Granting Habeas Corpus Relief*

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

4

The Act further requires that federal courts give great deference to a state court's factual findings. *See Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. This presumption applies to all findings, express and implied. *See Valdez v. Cockrell*, 274 F.3d 941, 948 (5th Cir. 2001). The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written opinion, it is an adjudication on the merits, which is entitled to this presumption. *See Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

### *Issues (1) Delayed Prosecution and (4) Vindictive Prosecution*

Petitioner claims that the state delayed prosecuting him until after other unrelated criminal charges were dismissed and that the delay resulted in the state's inability to produce the "only real evidence"-the shoes and jail videotapes, and his inability to present his only defense. (Pet. at 7; Pet'r Br. at 8-10, 19-22)

5

Petitioner was alleged to have committed the instant offense on May 3, 2006. (State Habeas R. at 64) He asserts that it was not until September 6, 2006, after learning the original charges for which he was being held at the time were to be dismissed, that the state pursued the charges against him for the instant offense out of vindictiveness. (Pet'r Br. at 5, 8-10, 19) Petitioner was formally indicted on November 1, 2006. (State Habeas R. at 64) The state courts denied petitioner's claims without express findings of fact or written order. Under these circumstances, a federal court may assume that the state court applied correct standards of federal law to the facts, unless there is evidence that an incorrect standard was applied, and imply fact findings consistent with the state court's disposition. *Townsend v. Sain*, 372 U.S. 293, 314 (1963)[1]; *Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003); *Catalan v. Cockrell*, 315 F.3d 491, 493 n.3 (5th Cir. 2002).

To succeed on a prosecutorial delay claim, a petitioner must show (1) that the delay "was intentionally brought about by the government for the purpose of gaining some tactical advantage

---

[1] The standards of *Townsend v. Sain* have been incorporated into 28 U.S.C. § 2254(d). *Harris v. Oliver*, 645 F.2d 327, 330 n.2 (5th Cir. 1981).

6

over the accused in the contemplated prosecution or for some other bad faith purpose" and (2) that the delay "caused actual, substantial prejudice to his defense." *United States v. Mmahat*, 106 F.3d 89, 94 (5th Cir. 1997).

Petitioner has failed to make a showing under either prong of the test. Nothing whatsoever in the record suggests the delay was due to deliberate state actions aimed at obtaining trial advantages or any other advantage, and petitioner presents no evidence that the shoes and videotapes were actually logged into the Hood County Sheriff's Office evidence room to be preserved for petitioner's trial or that the shoes and videotapes would have actually exonerated him. Furthermore, petitioner presents no evidence that his indictment for the underlying offense was a vindictive prosecutorial response to the dismissal of other criminal charges against him. Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue, unsupported by anything else contained in the record, to be of probative evidentiary value. *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).

*Issues (2) Spoilation of Evidence*
*and*
*(3) Brady Violation*

Petitioner claims the state inexplicably lost the shoes and

videotapes prior to trial, which raises the issue of evidence spoilation and a presumption that the items were unfavorable to the state. (Pet. at 7; Pet'r Br. at 11-18) Petitioner further claims the state's loss of the exculpatory evidence resulted in the denial of a fundamentally fair trial under *Brady v. Maryland*.

In the state habeas proceedings, the district attorney responded by affidavit to petitioner's claims, in relevant part, as follows:

> First, did the State lose or destroy evidence, specifically the shoes in which the contraband was discovered and the video tape recordings of Applicant's arrival at the jail immediately prior to the discovery of the contraband? The shoes in which the contraband was discovered were not preserved for Applicant's trial and remain unavailable. Because there is no evidence that the shoes were destroyed, I would say that they were lost. There is no evidence that they were ever logged into the Hood County Sheriff's Office Evidence Room with the Evidence Custodian. Additionally, a video tape recording of Applicant's arrival at the jail immediately prior to the discovery of the contraband was not preserved for Applicant's trial. There is no evidence that a recording was ever logged into the Hood County Evidence Room with the Evidence Custodian. There is no evidence that such a video tape was destroyed. The only evidence that such a video tape ever existed was a brief statement by Angela [sic] Jones during cross-examination at Applicant's trial. However, there is no evidence that a tape if it existed contained a recording of Applicant as no one ever testified that they saw a recording.
>
> Second, did Richard Hattox [petitioner's trial attorney] make a request for such evidence and did Mr. Hattox make any objections regarding the evidence? The

8

> local rules of the 355th Judicial District Court
> require the State to disclose to defense counsel all
> exculpatory evidence and all evidence to be used at
> trial. On December 5, 2006, which was several months
> after the date of the offense, Mr. Hattox informed me
> that he had been retained to represent Applicant. My
> file contained documentation of all evidence that was
> seized in connection with the investigation of
> Applicant's charge as well as documentation of the
> location of that evidence. As stated above, there has
> never been any evidence that any shoes or video tapes
> were preserved as evidence in Applicant's case. Mr.
> Hattox reviewed the [sic] my file. When Mr. Hattox
> could find no documentation in my file that the shoes
> and video tape in question was in evidence, Hood County
> Deputies informed me that Mr. Hattox went to the Hood
> County Sheriff's Office and conducted his own inquiry.
> Mr. Hattox did request the State to produce all
> evidence, including the shoes in which the contraband
> was located and all recordings of the Applicant in the
> Hood County Jail.

(State Habeas R. at 11-12)

Based on the district attorney's testimony, the state habeas court entered the following findings:

> H. There is no evidence that the shoes and video tape
> existed and were intentionally not produced at
> trial by the state. The evidence indicates that
> the shoes were simply lost. There is no
> definitive evidence that a video tape recording of
> Applicant's arrival at the Hood County Jail ever
> existed. It was never logged into the Hood county
> Evidence Room, and there is no evidence that such
> video tape, if it existed, was destroyed.

(*Id.* at 62)

The Texas Court of Criminal Appeals denied the claim without written order on the findings of the trial court. Petitioner has

9

failed to present clear and convincing evidence to rebut the presumption of correctness of the state court's findings or to show the state courts' adjudication of the issue is unreasonable or contrary to or an unreasonable application of clearly established federal law, as determined by the Supreme Court.

The state has a duty to preserve and disclose exculpatory evidence that is material to either guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Evidence is material if the exculpatory value of the evidence was apparent before it was lost or destroyed and was of such a nature that the defendant would have been unable to obtain comparable evidence by other reasonably available means. *California v. Trombetta*, 467 U.S. 479, 488-89(1984). Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *United States v. Bagley*, 473 U.S. 667, 682 (1985). Absent a showing of bad faith, failure to preserve *potentially* useful evidence does not constitute a denial of due process. *Ariz. v. Youngblood*, 488 U.S. 51, 57-58 (1988).

Thus, a federal due process violation occurs when the state

suppresses or fails to disclose material exculpatory evidence, regardless of whether the state acted in bad faith. *Illinois v. Fisher*, 540 U.S. 544, 547-48 (2004). However, to prove a due process of law violation based on the state's loss or destruction of potentially useful evidence, as opposed to material, exculpatory evidence, the defendant must show the state acted in bad faith in destroying the evidence. *Arizona v. Youngblood*, 488 U.S. 51, 57-58). Potentially useful evidence is evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant. *Id.* at 57.

Although, petitioner claims the shoes and videotapes were material, exculpatory evidence that would have exonerated him, he presents no evidence to support his assertion. Even if the two items of evidence were material, of which there was testimony during trial, there is no evidence that the two items would have been favorable to petitioner's defense. Thus, assuming the shoes and any videotape recordings that may have existed were only potentially exculpatory, it was necessary that petitioner demonstrate bad faith on the part of the state, such showing not having been made by petitioner, in failing to preserve the evidence.

### Issue (5) Ineffective Assistance of Counsel

Petitioner claims his trial counsel was ineffective by failing to (1) present authorities and move for dismissal at or before trial regarding the spoilation issue and lack of affirmative links between him and the contraband, and (2) contact, subpoena, or present witnesses in favor of his defense during the guilt/innocence phase of trial or in mitigation during the punishment phase. (Pet. at 8A; Pet'r Br. at 20-26)

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Strickland v. Washington*, 466 U.S. 668, 688 (1984). To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Strickland*, 466 U.S. at 687, 697.

In applying this standard, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id.*

12

at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Where, as here, a petitioner's ineffective assistance claims have been reviewed on their merits and denied by the state courts, federal habeas relief will be granted only if the state courts' decision was contrary to or involved an unreasonable application of the standard set forth in *Strickland*. *See Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Santellan v. Dretke*, 271 F.3d 190, 198 (5th Cir. 2001).

The state habeas judge, who also presided over petitioner's trial, conducted a hearing by affidavit and entered findings of fact consistent with counsel's affidavit, which were adopted by the Texas Court of Criminal Appeals, refuting petitioner's claims of ineffective assistance. (State Habeas R. at 178-82) Applying the *Strickland* attorney-performance standard to its factual findings, the state habeas court concluded petitioner had failed to prove counsel provided ineffective assistance. (Supp. State Habeas R. at 63) Petitioner has failed to rebut the findings of fact by clear and convincing evidence, thus the court defers to those findings.

Petitioner claims his trial counsel failed to raise the issues of spoilation and his lack of knowledge and affirmative links to the contraband before or during trial and to contact, subpoena, or present witnesses in favor of his defense during the guilt/innocence phase of trial or in mitigation during the punishment phase.

Trial counsel, Richard Hattox, submitted a thorough affidavit recounting his representation of petitioner and responded particularly to petitioner's claims, in relevant part, as follows:

> Prior to trial in this cause I exercised the authority granted under the Trial Court's local rules in terms of conducting discovery with the District Attorney's office.
>
> On at least five separate occasions, I personally examined the State's file, discussed the contents of the State's file with Rob Christian, the duly elected District Attorney, and consulted with the defendant while he was in the Hood County Jail.
>
> The defendant was originally in jail on other charges that were dismissed. While in jail, awaiting parole revocation, the defendant was charged with possession of a controlled substance in a penal institution.
>
> **A.** The Defendant contends, according to the opinion of the Court of Criminal Appeals dated March 11, 2009 that Trial Counsel rendered ineffective

assistance because Counsel failed to object or preserve error with respect to the State's loss, destruction or failure to produce evidence that would have been favorable to him.

    I certify that I conducted a diligent search in the State's file, and personally conducted a search at the Hood County Jail attempting to locate and find the pair of shoes from which the controlled substance was found allegedly worn by Defendant and video tapes of the alleged offense.

    I was informed by the District Attorney, Rob Christian[,] on several occasions that the State had no witness that could identify the Defendant's shoes, and that no tapes existed.

    I was specifically told by Joseph Yelverton that the shoes in question were not maintained or preserved independent of a number of . . . pair[s] of shoes that were kept in the jail. Yelverton informed me that neither he nor anyone he knew could identify the shoes in question. During the Trial jailer Yelverton testified that he did not know where the shoes found on the Defendant went from the time he discovered the controlled substance in them. I asked Yelverton specifically if he had the relevant shoes. Yelverton testified he had no idea where the shoes were, and didn't keep them because his supervisor had them. Yelverton agreed with Trial Counsel that keeping the shoes would have been relevant and important.

    Yelverton also testified that certain video tapes were kept in the relevant areas of the jail, when asked by Trial Counsel.

    Lieutenant Angelia Jones testified that she was the head jailer of the Hood County Jail, and along with Yelverton, found the contraband in the Defendant's

shoes. Jones testified the shoes were not identifiable. Jones testified that she turned the shoes over to Deputy Felan and had no knowledge of where the relevant shoes were. Jones testified the video cameras were working at the jail but she did not have a tape of the booking area or the sally port.

Deputy Felan testified that he placed the shoes into evidence but had no idea where they were. Felan testified that it was possible the shoes had not been taken and put into evidence. Felan kept no picture of them. Felan agreed that those shoes were important and relevant. Felan thought he kept the shoes but could not find in his report that he had retained them or placed them into evidence. The evidence custodian did not produce the shoes or the video tape.

I did not specifically object with respect to the State's loss, destruction, or failure to produce evidence which would have been favorable to the defense. However, this Court has previously ordered, in local rules that the State is to disclose all exculpatory material, even without written request.

During final argument Trial Counsel began his argument criticizing the State for the failure to produce the shoes. Trial Counsel asked the jury how "we were supposed to defend someone if we could not get a look at evidence such as [the] shoes." Trial Counsel castigated the State in final argument regarding the failure to produce the video tape. The shoes were mentioned many times during the final argument. Even the Defendant spoke of the shoes.

. . .

C. The Court of Criminal Appeals['] opinion alleges that Trial Counsel failed to adequately demonstrate or argue the Defendant's lack of knowledge

16

or affirmative link in the contraband.

Trial Counsel asked the jailer Yelverton whether or not Defendant was attempting to hide or warn other inmates when the jailers approached him in the jail. Defendant complied while everyone else was attempting to warn of the jailers approaching. Trial Counsel questioned Yelverton as to the Defendant making no furtive gestures trying to hide his shoes. Trial Counsel asked Yelverton if the Defendant did anything to bring attention to himself. Trial Counsel got Yelverton to say that even though he may have possessed marijuana that day he had no knowledge of it and therefore had committed no criminal offense. Trial Counsel asked Yelverton if knowledge made a difference in a case and he believed other inmates possessed that knowledge.

During final argument Trial Counsel immediately began arguing lack of Defendant's knowledge. Trial Counsel argued that other inmates knew the police were headed their way, began hiding stuff and acting like they knew of the contraband while the Defendant didn't. Trial Counsel argued that even Officer Yelverton had testified that this Defendant shouldn't be convicted on this insufficient level of evidence. Trial counsel argued that the lack of poof that Defendant knew of the contraband justified an acquittal. Trial Counsel argued that other inmates acted like they were guilty and that the Defendant did not. Trial Counsel summed up his argument as follows:

> "So on Les Hofman's behalf, I am going to ask you to find that there is just insufficient evidence and proof to prove knowledge, to prove that he possessed it, to prove that he moved into it [sic] at jail, that he was aware that he had it on him, that it's even the same marijuana that they allege they found.

17

**D.** Court of Criminal Appeal's [sic] opinion states that the Defendant claims Trial Counsel was ineffective because of his failure to interview or present witnesses for the defense at trial.

While I represented Mr. Hofman, conducted discovery, and prepared for trial, I could find nor identify no other witnesses that were relevant or that could be utilized during the trial of this case to prove or disprove Defendant[']s guilt. Each of the witnesses called by the State was cross examined by Trial Counsel. I could find no other witnesses in [the] State's file nor from discussing the case with the Defendant that would have had relevant knowledge, other than persons who would have enjoyed the right and privilege not to testify for Appellant at this trial.

The other inmates in the Hood County Jail all enjoyed Fifth Amendment rights to decline to testify, were all represented by counsel, and would not had testified if they were called as a witness. I spoke personally with some of the lawyers that had been appointed to represent those individuals and none expressed any interest in allowing their clients to testify at trial.

**D.** Court of Criminal Appeal's [sic] opinion states that the Defendant alleges his Trial Counsel was ineffective because of his failure to interview or present character witnesses during the punishment stage.

I have carefully reviewed my memory and my file in regard to our consideration of punishment witnesses.

The only witness that I have any recollection of that could have possibly testified and was available was the Defendant's wife. The only potential character witness that was available to this attorney through

discussions with the Defendant was his wife, Sheryl
Hofman. The Defendant asked me to not call Sheryl
Hofman as a witness because Defendant believed that she
could not stand up to cross examination and that the
experience would be too hard for her to endure. I have
no recollection of the Defendant or his wife Sheryl
Hofman informing me that any other person would or
could be available to testify as a character witness
for Defendant.

(Supp. State Habeas R. at 6-9 (citations omitted))

Based on counsel's affidavit, the state habeas court determined petitioner's claims were wholly without merit and, applying the *Strickland* standard, concluded petitioner had failed to prove trial counsel provided ineffective assistance of counsel. (*Id.* at 61-63)

Having reviewed the record, the totality of the representation provided by counsel to petitioner was well within an objective standard of reasonableness. Petitioner presents no compelling argument or evidence to overcome the strong presumption that his trial counsel was competent or that but for counsel's alleged acts or omissions, the result of his trial would have been different.[2] The state court's denial of

---

[2] In the state habeas proceeding, petitioner presented the affidavits of his wife, Lisa Martinez, an apparent friend of petitioner's, and Mildred Jordan, a neighbor, in which they attest to his good character. None of the three, however, aver

petitioner's claims is not objectively unreasonable nor is it contrary to or involve an unreasonable application of *Strickland*.

For the reasons discussed herein,

The court ORDERS the petition of petitioner for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied.

Pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Court, and 28 U.S.C. § 2253(c), for the reasons discussed herein, the court further ORDERS that a certificate of appealability be, and is hereby, denied, as petitioner has not made a substantial showing of the denial of a constitutional right.

SIGNED October 7, 2010.

_____
JOHN McBRYDE
United States District Judge

---

that they were available and willing to testify at petitioner's trial. (State Habeas R. at 22-26) *See Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001).